IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AARON CURTIS, | § | |
|     Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 3:12-CV-4866 |
| | § | |
| MICHAEL WADE MOSHER | § | |
| | § | |
|     Defendant. | § | |

### PLAINTIFF'S AMENDED COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Aaron Curtis ("Plaintiff") complaining of and about Michael Wade Mosher ("Mosher," "Defendant Mosher" or "Officer Mosher") and for cause of action shows unto the Court the following:

### I.

### PARTIES AND SERVICE

1.  Plaintiff Aaron Curtis is a citizen of the United States and the State of Texas and a resident of Dallas County, Texas living at 14140 Haymeadow Drive, #104, Dallas, Texas 75248.

2.  Defendant Michael Wade Mosher has been served with process and has appeared in this action.

### II.

### JURISDICTION AND VENUE

3.  The action arises under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and Title 42 U.S.C. §§ 1983 and 1988.

4.  This Court has jurisdiction over these claims pursuant to Title 28 U.S.C. §§ 1331

and 1343.

5. Venue is proper pursuant to Title 28 U.S.C. § 1391(b)(1) in that the Defendant resides and the cause of action arises in the Northern District of Texas, Dallas Division.

### III.

### NATURE OF ACTION

6. This is an action to recover for violations of the Plaintiff's constitutional rights and/or privileges or immunities guaranteed under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and Titles 42 U.S.C. §§ 1983 and 1988.

7. Specifically, Plaintiff was the victim of excessive force and denial of essential medical attention under color of law.

### IV.

### CONDITIONS PRECEDENT

8. All conditions precedent to jurisdiction have occurred or been complied with.

### V.

### FACTS

9. On January 22, 2011, Defendant Michael Wade Mosher, badge number 8470, was employed as a Dallas Police Officer.

10. The Plaintiff Aaron Curtis was living at the Celery Stalk Apartments at the time.

11. On the same date, January 22, 2011, Plaintiff left his apartment and was walking to a local park with some friends.

### A.

### CURTIS COOPERATES WITH POLICE WHEN CONFRONTED

12. While walking down the alley, Curtis saw Dallas Police Department Officer Cade

Hastings in his patrol car.  Seeing the officer, Plaintiff's two friends ran away, but Plaintiff remained.

13. Officers in different vehicles soon arrived at the scene.

14. Deputy Chief Jesse Reyes frisked Plaintiff.  Curtis admitted to having smoked marijuana, and Reyes performed a pat down search of Plaintiff and recovered a pipe used for smoking marijuana.  The pipe was retrieved and placed near the windshield of Hastings' car.

15. Defendant Mosher and his then-partner Officer Matthew Wagner arrived at the scene sometime before 8:40 p.m.

16. When Mosher arrived at the scene, he saw Chief Reyes and Curtis standing by Hastings' car.

17. Hastings told Mosher that Plaintiff had been smoking marijuana from the pipe that was on the hood of a police car.

18. Mosher then decided to search Plaintiff again, and asked if Plaintiff had anything on his person that may "stick or poke" Mosher.

19. Plaintiff volunteered that he had a lighter and a small knife in his pockets.

20. The knife was folded, and would not have hurt Mosher during the search.

21. Mosher retrieved the pocketknife and the lighter and placed them in the car he shared with Wagner.

22. The Defendant did not tell any of the other officers where he placed the lighter and pocketknife.

### B.

### DPD CHIEF REYES DETERMINED PLAINTIFF IS NOT INTOXICATED

23. Defendant Mosher detained and began questioning Plaintiff. Curtis was cooperative

and responsive to questions during this time.

24. Deputy Chief Reyes explained that a computer search confirmed that Curtis had no outstanding warrants, so the "officers elected to issue him a citation for possession of drug paraphernalia."

25. At 8:45 p.m., while the group was still in the alley, Hastings gave Curtis a citation for possession of drug paraphernalia.

26. "However, Mr. Curtis did not know his exact address because he had just moved into a nearby apartment on Arapaho Road," the deputy chief further stated. **Exhibit "A," Sworn Statement of Deputy Chief Reyes.** "The officers decided to transport Mr. Curtis to his home to get the exact address prior to issuing the citation."

27. Mosher and the other officers then handcuffed Curtis and drove him to his apartment in Mosher and Wagner's car. According to Deputy Chief Reyes and others, the officers did this, because Curtis knew where he lived, but did not know the formal address.

28. Once at the apartment, Curtis and Wagner stayed in the car, and Mosher went upstairs to talk to Curtis' girlfriend, Chappal Kuhn.

29. According to Mosher, Kuhn told him about an incident involving Plaintiff's friend, Caleb Brown, that occurred earlier that evening at a nearby 7-11 convenience store. Kuhn claimed that Brown, in Curtis' presence, had made a fist while confronting her only a couple of inches away from her body. Kuhn identified Brown as one of the friends Curtis had been walking down the alley with that evening.[1]

30. Mosher has testified that when he heard these statements that he went downstairs

---

[1] In a subsequent sworn statement to the Dallas Police Department Internal Affair Division, Kuhn makes no reference to Caleb Brown or the incident alleged at the 7-11. *See* **Exhibit "B," Sworn Statement of Chappal Kuhn.**

to confront Curtis about it. He saw Curtis leaning against the police car, un-handcuffed.

31. While Mosher was upstairs, three other officers, Officers Ryan Vertz, Officer Tashonda Wesley, and Neil Becker had arrived at the scene.

32. Officers Vertz, Wesley and Becker worked on a different shift from Mosher.

33. Mosher testified that he asked Curtis about the events, and asked him why he had not "done anything about it." Curtis responded that he had already been to jail, and did not want to go back, presumably for fighting anyone.

34. In a sworn statement during the Internal Affairs investigation, Officer Vertz explained what Mosher did when he came downstairs.

### C.

### MOSHER ARRESTS CURTIS AND CALLS HIM A "COWARD" AND A "PUSSY"

35. Officer Vertz reported that Mosher "immediately had a negative attitude towards Mr. Curtis" after speaking with Ms. Kuhn. According to Vertz, Mosher "proceeded to call Mr. Curtis a 'pussy' for not standing up for his wife."

36. Officer Wesley gave a sworn statement that was similar this one. As she explained, that after talking to Ms. Kuhn, Mosher "became upset and told Mr. Curtis that he was a coward for not standing up for his wife."

37. Officer Becker's statements to Internal Affairs mirror the testimony of officers Vertz and Wesley. Becker likewise said Mosher called Curtis a "coward for not defending his wife."

38. After the statements, Vertz explained, Mosher "told Mr. Curtis to turn around because he was going to jail for public intoxication." **Exhibit "C," Sworn Statement of Officer Ryan Vertz.**

39. "For whatever reason," Vertz further stated, "before Mr. Curtis could completely comply with Officer Mosher's request to turn around and put his hands behind his back, Officer Mosher jumped on Mr. Curtis' back (difference in height), placed his arm around Mr. Curtis' upper torso near the neck, and spun Mr. Curtis around to the ground." *Id.*

40. According to Officer Vertz, Plaintiff landed on the ground with the Defendant on top of his back.   Officer Vertz further stated:

> Officer Mosher told Mr. Curtis to put his hands behind his back and
> to stop resisting.
> I personally did not observe what I thought to be resisting.  Mr.
> Curtis' hands were under his body, but that only occurred because
> he was trying to brace the fall to the ground. *Id.*

41. At this point, Mosher and Hastings hoist Curtis' body near the driver's side trunk area of Mosher and Wagner's car.

42. While on the ground, Plaintiff and his girlfriend state that Mosher kicked him in the head.

### D.

### MOSHER PUNCHES CURTIS WHILE HANDCUFFED & CALLS HIM A FAGGOT

43. Vertz further explained

> I noticed that Mr. Curtis had an abrasion to his forehead from hitting
> the concrete.  Officer Hastings moved to the right side of Officer
> Mosher but at this time did not have hands on Mr. Curtis.  Officer
> Mosher then proceeded to punch Mr. Curtis, while handcuffed and
> compliant, approximately 3 or 4 times in his right rib cage…
> Officer Mosher then placed Mr. Curtis in his car, calling Mr. Curtis
> a "faggot" before he closed the car door.  *Id.*

44. Officer Tashonda Wesley gave a similar account.   In her sworn statement to Internal Affairs, she writes that Curtis complied with Mosher's directives and did not resist arrest.

45. In particular, Officer Wesley stated that Officer Mosher "grabbed Mr. Curtis by the upper torso and took him to the ground." **Exhibit "D," Sworn Statement of Officer Tashonda Wesley.**

> At this time, Officer Hastings bent down and assisted Officer Mosher with only the handcuffing. Officer Mosher and Officer Hastings then got Mr. Curtis up. Officer Mosher then leaned Mr. Curtis against the left of the squad car. Officer Mosher then leaned Mr. Curtis against the left side of the squad car. ***Officer Mosher then proceeded to hit Mr. Curtis four times in his right side ribs.*** Officer Hastings tried to stop Officer Mosher but Officer Mosher pushed Officer Hastings and told him to get the fuck off of him. *Id.*

46. She further stated, "While Officer Mosher placed Mr. Curtis in the right side of the squad car, Officer Mosher then called him a faggot." *Id.*

47. Officer Becker provided a similar sworn statement about Mosher's conduct.

48. Like Officers Vertz and Wesley, Officer Becker said that Mosher hit Curtis in the "about four times" in the "right side rib area," while the plaintiff was handcuffed. **Exhibit "E," Sworn Statement of Officer Neil Becker.**

49. When Mosher ordered Curtis to place his hands behind his back, Becker observed:

> Officer Mosher then approached Mr. Curtis from behind and placed his arm across Mr. Curtis (*sic*) chest area and took Mr. Curtis to the ground. Both Officer Mosher and Mr. Curtis fell to the ground and this time Officers Hastings (*sic*) approached to assist in handcuffing Mr. Curtis… Mr. Curtis was stood up by Officer Mosher and walked to the left side of his squad car. At this tie I observed Officer Mosher strike Mr. Curtis about four times in what appeared to be Mr. Curtis (*sic*) right side rib area. *Id.*

50. Officer Becker further added

> Officer Hastings, who was the closest to Mr. Curtis, placed his arm between Mr. Curtis and Officer Mosher and appeared to separate them. Officer Mosher stated to Officer Hastings get the Fuck off me. Officer Mosher then placed Mr. Curtis into his squad car on the right side. I did hear Officer Mosher say either "fag" or

"faggot," while placing Mr. Curtis in the vehicle. *Id.*

51. When Mosher told Curtis to "put his hands behind his back because he was going to CDC for public intoxication," she said. "Mr. Curtis complied with his demand," Officer Wesley stated further."[2] "Officer Mosher then grabbed Mr. Curtis by the upper torso and took him down to the ground."[3]

### E.

### CURTIS WAS NOT INTOXICATED OR A DANGER TO SELF OR OTHERS

52. The Dallas Police Department uses a standardized form for Public Intoxication charges that explains the condition of the suspect, and provides boxes for the arresting officer to check that indicate the bases for an arrest.

53. The boxes are checked to indicate whether a person shows various signs of intoxication. Specifically, the form asks for the "Condition" of the arrested suspect. Those Conditions include: **"Passed Out," "Unable to Walk," "ILL," "Injured," and "Other." Exhibit "F," Public Intoxication Report.**

54. The report form further includes a statement "This suspect had" followed by three boxes that state "bloodshot eyes," "slurred speech," and "breath smelling of an alcoholic beverage" and that the suspect "was a danger" to "self" and "other." *Id.*

55. To commit the offense of Public Intoxication, a person must be intoxicated in a public place to a degree that he is a danger to himself or others.[4]

56. On the report related to Plaintiff's Public Intoxication, the arresting officer only checked the box indicating that Curtis had bloodshot eyes. **Exhibit "F," Public Intoxication**

---

[2] Exhibit "D," Sworn Statement of Officer Tashonda Wesley.
[3] *Id.*
[44] Tex. Pen. Code §49.02 (West 2011).

Plaintiff's Amended Complaint Page 8 of 19
*Aaron Curtis v. Michael Wade Mosher and The City of Dallas*

**Report.**

57. None of the other boxes—including those indicating that Curtis was a danger to himself or to others—were checked.

58. Deputy Chief Reyes stated something similar. In explaining why Curtis was not arrested for the drug paraphernalia, the deputy chief said, "Mr. Curtis did not appear to display any symptoms of intoxication." **Exhibit "A," Sworn Statement of Deputy Chief Reyes.**

F.

**THE POLICE DENY CURTIS MEDICAL ATTENTION**

59. After arresting Plaintiff, Officer Mosher takes him to jail, rather than the hospital, when the need for medical care was obvious.

60. As Plaintiff explained in a letter to the Dallas Police Department, Mosher's partner took him inside took him inside, and another officer asked him what "what happened to my head." **Exhibit "G," Letter by Aaron Curtis.**

> I told him what happened and he told me not to say that to any other cops unless I want another beat down.
>
> Then he asked how did I get there and I told him I didn't know and he told me I was learning fast. Then they put me in the drunk tank for the rest of the night and no one ever asked me if I needed medical attention even though I was bleeding profusely from my head. *Id.*

61. The following day, Plaintiff's mother took him to Medical City Dallas. *Id.*

62. At Medical City Dallas, he was diagnosed with a concussion, loss of consciousness, and bruised ribs with abrasions. **Exhibit "H," Discharge Records of Aaron Curtis; Exhibit "I," Internal Affairs Investigation Report of Det. Jorge Guzman.**

G.

**DPD INVESTIGATES MOSHER AND TERMINATES HIM FOR EXCESSIVE FORCE**

63. Immediately after the incident, Officers Vertz, Wesley and Becker met together, and determined that they would report Mosher's misconduct to superiors.

64. Before Mosher ended his shift, he was contacted by a supervisor about the reports from the other officers.

65. In the following weeks and months, the Internal Affairs Division of the Dallas Police Department conducted an investigation.

66. During that investigation Detective Jorge Guzman determined that Defendant Mosher committed three violations of the DPD's Code of Conduct.

67. In pertinent part, Chapter IV Professional Conduct and Personal Bearing provides:

> **4.3** No employee shall engage in any conduct which adversely affects the morale or efficiency of the Department or which has the tendency to adversely affect, lower or destroy respect and confidence in the Department or Officer.
>
> **4.10** Officers shall not use any unnecessary or inappropriate force against any person.
>
> **4.16** No employee will make any comment or expression, either written or oral, which would deride, demean, condemn, or ridicule any person based upon their race, ethnicity, sex, religion, or sexual orientation, either on-duty or off-duty, if such comment will tend to generate controversy and disruption with the Department, impede upon the Department's general operation and performance, and affect working relationships necessary to the Department's functioning.   While on-duty or on City premises, employees' (sic) will neither display nor wear items that they know another person could reasonably consider offensive.

68. Det. Guzman determined that Mosher violated each of these provisions. **Exhibit "I," Internal Affairs Investigation Report of Det. Jorge Guzman.**

69. The investigation sustained allegations that Defendant Mosher made "inappropriate comments" to Plaintiff while on duty.

70. The investigation sustained allegations that Defendant Mosher used "unnecessary or inappropriate force" against Plaintiff.

71. The investigation sustained allegations that Mosher violated Section 4.3 by becoming hostile toward Officer Hastings when he attempted to separate the Defendant from Plaintiff.

72. Deputy Chief of Police Patricia Paulhill of the IA Division and Assistant Chief of Police Vincent Golbeck agreed with the findings, and recommended termination.  **Exhibit "J," Administrative Investigation Findings and Conclusions.**

73. Based on these findings, Chief of Police David O. Brown terminated Defendant. **Exhibit "K," Correspondence to Defendant Mosher from Chief David Brown.**

## H.
## ADMINISTRATIVE LAW JUDGE AFFIRMS TERMINATION

74. Mosher appealed his termination for employing excessive force, discourteous conduct to Plaintiff and for showing hostility to Officer Hastings.

75. An administrative law proceeding before Judge Willie Crowder was held.

76. During that proceeding, several witnesses testified, including Mosher himself.

77. Mosher admitted taking Curtis to the ground, and punching Curtis in the rib area four times. He testified that Curtis only partially complied with being handcuffed, and that necessitated taking Curtis to the ground. He further stated, that once handcuffed and within the grasp of two officers, Curtis resisted another search that Mosher was conducting. Mosher testified that he punched Curtis *twice* to gain compliance. He urged that Curtis did not comply, so he then punched him two more times, at which time, according to Mosher, Curtis complied.

78. Detective Guzman and other witnesses testified, stating that Mosher's punches were unnecessary.

79. The detective stated that Curtis was handcuffed and surrounded by other officers who could have assisted.

80. Furthermore, it was uncontested that Curtis was handcuffed.

81. Since he was handcuffed, Mosher—if Curtis were in fact resisting the search as asserted by Mosher—could have employed a wrist lock of some kind to gain compliance.

82. The administrative law judge heard the statements and received the evidence from Officers Vertz, Wesley and Becker, all of whom indicated that Mosher employed excessive force.

83. In conclusion, Judge Crowder affirmed Mosher's termination.

## I.

## MOSHER ADMITS FACTS THAT ESTABLISH EXCESSIVE FORCE

84. Mosher testified during the administrative hearing, and has likewise done so in this action.

85. Several of these admissions were summarized during cross examination in his administrative hearing in this single exchange:

> Q. And after you punched this unarmed, handcuffed prisoner, you shoved him into a squad car and called him a faggot, didn't you?
>
> A. Yes, I did.[5]

86. During each the administrative proceeding and during this action, he made several admissions of fact.

87. These admissions relate to his claims of qualified immunity.

88. These admissions are material to his claims of qualified immunity.

89. Mosher admitted during his administrative hearing that he called Curtis a coward.

90. Mosher admitted during his deposition in this action that he called Curtis a coward.

---

[5] April 12, 2012 Administrative Appeal of Michael Wade Mosher, at 56:4-7.

Plaintiff's Amended Complaint                                              Page 12 of 19
*Aaron Curtis v. Michael Wade Mosher and The City of Dallas*

91. Mosher admitted during his administrative hearing that he called Curtis a fag or a faggot.

92. Mosher admitted during his deposition in this action that he called Curtis a fag or a faggot.

93. Mosher admitted that he stipulated to calling Curtis a fag or faggot during the administrative proceeding.

94. Mosher admitted during his administrative hearing that he called Curtis a punk.

95. Mosher admitted during his deposition that he called Curtis a punk.

96. Mosher admitted that he used inappropriate language to Curtis during the incident.[6]

97. Mosher did not recall whether he called Curtis a pussy.

98. Mosher admitted in his administrative hearing that he took Curtis to the ground.

99. Mosher admitted during his deposition that he took Curtis to the ground.

100. Mosher admitted that he punched Curtis a total of four times in the rib area.

101. Mosher admitted that he punched Curtis while Plaintiff was handcuffed.

102. Mosher admitted that he punched Curtis while Plaintiff was unarmed.

103. Mosher denied kicking Curtis in the head as Curtis and Kuhn alleged.

104. Mosher admitted that, if he had kicked Curtis in the head, as Curtis and Kuhn alleged, that it would be excessive force.

105. Mosher admitted that Dallas Police Chief Brown terminated him for striking Plaintiff.

---

[6] April 12, 2012 Administrative Appeal of Michael Wade Mosher, at 36:13-17 ([City Attorney] Q.   And you agree that when you did those things, when you called Mr. Curtis a coward, a faggot, and a punk that you violated the Dallas Police Department Code of Conduct 4.16, correct? [Mosher] A.   Yes.).

106. During the IA investigation, it was established that Mosher had had a total of 23 violations.

107. Of the seventeen previous violations, five were for allegations of Inappropriate or Unnecessary Use of Force, one of which were sustained by the Department, and five were for allegations of Improper Comments or Verbal Abuse, one of which was sustained by the Department.[7]

---

[7] The complete record of Mosher's prior violations shows the following:

| Date | Violation |
|---|---|
| October 6, 2005 | Improper or No Action –Inconclusive |
| October 11, 2005 | Unknown allegation – Allegation voided |
| October 11, 2005 | Improper Comments –Inconclusive |
| February 25, 2006 | Inappropriate Use of Force – Inconclusive |
| | Improper Comments – Inconclusive |
| | Vehicle Impounded Improperly – Inconclusive |
| May 28, 2006 | **Fail to Give Identification on Request – Sustained** |
| | Action Taken: Received Advice & Counseling |
| July 5, 2006 | **AWOL, Court – Sustained** |
| | Action Taken: Received Documented Counseling |
| December 29, 2006 | **AWOL, Court – Sustained** |
| | **Action Taken: Supervisor's Report** |
| February 20, 2007 | **AWOL, Court – Sustained** |
| | Action Taken: Supervisor's Report |
| March 15, 2007 | **AWOL, Court – Sustained** |
| | Action Taken: Suspended 1 Day |
| June 27, 2007 | Verbal Abuse – Non Sustained |
| August 24, 2007 | **AWOL, Court – Sustained** |
| | Action Taken: Suspended 3 Days |
| September 11, 2007 | **AWOL, Job Assignment – Sustained** |
| | Action Taken: Written Reprimand |
| September 12, 2007 | **Traffic Accident, Preventable – Sustained** |
| | Action Taken: Written Reprimand |
| January 4, 2008 | **Inappropriate or Unnecessary Use of Force – Sustained** |
| | **Action Taken: Suspended 5 Days** |
| January 6, 2008 | Inappropriate or Unnecessary Use of Force – Not Sustained |
| March 5, 2009 | AWOL, Court – Sustained |
| | Action Taken: Suspended 10 Days |
| April 28, 2009 | Racial Profiling – Unfounded |
| | Improper Comments – Not Sustained |
| | **Improper or No Investigation – Sustained** |
| | Action Taken: Supervisor's Report |
| October 23, 2009 | Inappropriate or Unnecessary Use of Force – Exonerated |
| | Improper Comments – Not Sustained |
| | Failed to Provide Medical Treatment – Rescinded |
| May 10, 2010 | **Domestic disturbance Discrediting Dept. – Sustained** |
| | Administrative Warning, Violation of |
| | Action Taken: Suspended 10 Days |

108. Officer Mosher was, at one time, suspended for five days for the beating of a minor with a flashlight.[8]

## J.

## FELLOW OFFICERS ENDURED ABUSE FOR REPORTING MOSHER'S MISCONDUCT

109. After Vertz, Wesley and Becker reported Mosher, they endured hostility and retaliation from other officers.[9]

110. Other officers put "trash" in one or more of these officers' mailboxes or mail trays after reporting Mosher.[10]

111. Other officers put "nuts" in one or more of these officers' mailboxes after reporting Mosher.

112. Mosher participating in these acts of retaliation.

113. Other officers referred to one or more of these offices as "squirrels" after reporting Mosher.

---

| June 17, 2010 | Inappropriate or Unnecessary Use of Force – Exonerated |
| October 25, 2010 | False Arrest – Unfounded |
| January 29, 2011 | **Improper Comments – Sustained** |
| | **Inappropriate or Unnecessary Use of Force – Sustained** |
| | Inappropriate or Unnecessary Use of Force – Not Sustained |
| | Prisoner, Improper Transport – Not Sustained |
| | Failed to Provide Medical Treatment – Not Sustained |
| | Conduct Discrediting Department – Sustained |
| | Action Taken: TERMINATED on June 10, 2011 |
| May 10, 2011 | Shooting, Officer Involved – Pending Review as of June 24, 2011 |

[8] *See* Exhibit B.

[9] April 12, 2012 Administrative Appeal of Michael Wade Mosher, at 56:8-12. (**Q.** In your supplemental statement that you gave to Internal Affairs, you claimed that other officers, after this evening, that other officers started calling Officers Vertz, Wesley and Becker squirrels, right? **A.** Yes, I did.).

[10] April 12, 2012 Administrative Appeal of Michael Wade Mosher, at 56:13-15 (**Q.** And that they were leaving trash, nuts and other debris in their mail trays; is that right? **A.** Yes.).

Plaintiff's Amended Complaint                                                                                                                                                                Page 15 of 19
*Aaron Curtis v. Michael Wade Mosher and The City of Dallas*

114. Mosher testified that officers had used the term "squirrel" as long as he had been an officer.

115. He stated it was a term that officers would use to isolate other officers.

## VI.

## CAUSES OF ACTION

### DEFENDANT MICHAEL WADE MOSHER

116. The factual allegations contained in all of the paragraphs of this Amended Complaint are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

117. Defendant Mosher willfully and maliciously beat Plaintiff despite the fact that Mosher had no legitimate reason to do so.

118. The force used by Mosher was recklessly excessive and caused Plaintiff bodily injury.

119. Mosher's exercise of established policies and customs violated Plaintiff's clearly established rights under the United States Constitution to:

　　a. be free from a seizure without probable cause

　　b. be free from unreasonable seizure;

　　c. be free from the use of unreasonable, unnecessary, and excessive force; and

　　d. the right to medical care for injuries received while in custody;

120. Defendant Dallas is liable to Plaintiff for said constitutional violations for failure to train or supervise Mosher in such a deficient manner that it was a deliberate indifference to the rights of those with whom the Mosher interact with. Mosher's previous pattern of civil rights violations made it obvious that, without further training, Mosher was highly likely to violate

citizens' federally protected rights.

121. Such failure was the factual and proximate cause of the wrongdoing alleged.

## VII.

## DAMAGES

122. As a result of the actions and/or omissions of Defendant described hereinabove, Plaintiff sustained damages including, but not limited to, the following:

a. All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

b. All reasonable and necessary costs incurred in pursuit of this suit;

c. Inconvenience;

d. Mental anguish in the past;

e. Mental anguish in the future;

f. Reasonable medical care and expenses in the past. These expenses were incurred by Plaintiffs and such charges are reasonable and were usual and customary charges for such services in Dallas County, Texas;

g. Reasonable and necessary medical care and expenses which will in all reasonable probability be incurred in the future;

h. Loss of earnings in the past;

i. Loss of earning capacity which will, in all probability, be incurred in the future;

j. Physical pain and suffering in the past;

k. Physical pain and suffering in the future;

l. Physical impairment in the past; and

m. Physical impairment which, in all reasonable probability, will be suffered in the future.

## VIII.

## EXEMPLARY DAMAGES

123.    Plaintiff would further show that the acts and omissions of Defendant complained of herein were committed with malice or reckless indifference to the protected rights of the Plaintiff.    In order to punish said Defendant for engaging in unlawful vicious attacks, and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendant Mosher for exemplary damages.

## IX.

## ATTORNEYS' FEES

124.    Plaintiff is further entitled to receive his reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

## X.

## CONCLUSION

Plaintiff, Aaron Curtis, respectfully urges that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for damages in an amount within the jurisdictional limits of the Court; exemplary damages, together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

Respectfully submitted,

**HENLEY & HENLEY, P.C.**

By: /s/ Geoff J. Henley
Geoff J. Henley
Texas Bar No. 00798253
ghenley@henleylawpc.com
R. Lane Addison
Texas Bar No. 24059355
rladdison@henleylawpc.com
David Gonzales
State Bar No. 24073258
dgonzales@henleylawpc.com
3300 Oak Lawn Avenue, Suite 700
Dallas, Texas   75219
Tel. (214) 821-0222
Fax. (214) 821-0124

ATTORNEYS FOR PLAINTIFF

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**
**CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2013, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the CM/EFC system which will send notification to all attorneys of record who are registered for electronic notice.

/s/ Geoff J. Henley
Geoff J. Henley