UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

AARON CURTIS,                            §
                                         §
    Plaintiff,                           §
                                         §
v.                                       §   CIVIL ACTION NO. 3:12-CV-4866-B
                                         §
MICHAEL WADE MOSHER,                     §
                                         §
    Defendant.                           §

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Michael Wade Mosher's Amended Motion for Summary

Judgment (doc. 48). For the following reasons, Defendant's Motion is **GRANTED in part** and

**DENIED in part**.

## I.

## BACKGROUND[1]

This case arises out of a stop and arrest for public intoxication. Plaintiff alleges that

Defendant used excessive force against him while handcuffing him. He further alleges Defendant

denied him medical attention for the injuries he suffered as a result of the alleged excessive force.

Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 for alleged violations of his

constitutional rights under the Fourth, Fifth, and Fourteenth Amendments.

---

[1] The facts are derived from the parties' pleadings, summary judgment briefs, and evidentiary
submissions. Unless characterized as a contention by one of the parties, these facts are undisputed. Citations
to pages within Plaintiff's Appendix of Exhibits in Support of Plaintiff's Response to Defendant's Amended
Motion for Summary Judgment (doc. 52) omit the zeroes before the first digit of the page number. For
example, page Pl. App. 000054 is cited as "Pl. App. 54." Citations to pages within Defendant's Appendix in
Support of First Amended Motion for Summary Judgment (doc. 50) omit preceding zeroes as well. For
example, page 000026 is cited as "26."

A.     *Factual Background*

On the evening of January 22, 2011, Plaintiff and some friends left Plaintiff's apartment to go to a nearby park. Pl.'s Ex. 10, Curtis Aff. at Pl. App. 71. While walking in an alley, Plaintiff and his friends saw police. *Id.*; Am. Compl. at 2–3. Plaintiff's friends ran away, but Plaintiff remained behind. Am. Compl. at 2–3. More police vehicles soon arrived. *Id.* at 3. Deputy Chief Jesse Reyes searched Plaintiff, who admitted he had smoked marijuana. *Id.* A pipe used for smoking marijuana was recovered from Plaintiff's pocket and placed on the hood of a police car. *Id.* By this time, Defendant and his then-partner, Officer Matthew Wagner, arrived at the scene. Am. Compl. 3; Def.'s Ex. C, Mosher Aff. 25 at ¶¶ 4–5.

At one point it was revealed that Plaintiff lived nearby in an apartment with his girlfriend. Am. Compl. 4 at ¶ 26; Mosher Aff. 26 at ¶ 7. Defendant claims he told Officer Hastings they had the option of writing Plaintiff a citation for public intoxication and paraphernalia and releasing him into his girlfriend's custody rather than taking him to jail. Mosher Aff. 26 at ¶ 7. It was decided that Defendant would be issued a citation for paraphernalia and released to his girlfriend. *Id.* at ¶ 8; Am. Compl. 4 at ¶ 26.

Before leaving the alley, Defendant searched Plaintiff and asked if he had anything on his person that might "stick or poke" him. Mosher Aff. 26 at ¶ 9; Am. Compl. 3 at ¶ 18. Plaintiff admitted he had a small folded knife in his pocket. Mosher Aff. 26 at ¶ 10; Am. Compl. 3 at ¶ 19. Defendant retrieved the pocketknife and placed it in his patrol car. Mosher Aff. 26 at ¶ 11; Am. Compl. 3 at ¶ 21. Defendant then completed a pat down search of Plaintiff and placed him in his

squad car to take him to his apartment.[2] Mosher Aff. 26 at ¶ 11.

When the officers arrived at Plaintiff's apartment, Officer Hastings stayed with Plaintiff while Defendant went upstairs to speak with Plaintiff's girlfriend, Chappal Kuhn. Mosher Aff. 26 at ¶¶ 12–13. Defendant alleges that Ms. Kuhn told him that one of the two men with whom Plaintiff had been walking in the alley, Caleb Brown, had screamed and cursed at her earlier in the evening. *Id.* at ¶ 15. Defendant further alleges that Ms. Kuhn said she was afraid Mr. Brown would assault her because he had run up to her, clenched his fists, and made a violent gesture towards her. *Id.* at 27 ¶¶ 16–17. Following his discussion with Ms. Kuhn, Defendant returned downstairs to speak to Plaintiff about the alleged incident between Ms. Kuhn and Mr. Brown. *Id.* at ¶ 20. The parties disagree about what happened next.

According to Plaintiff's Amended Complaint and summary judgment response, Defendant asked Plaintiff why he had done nothing about Mr. Brown's threatening behavior.[3] Am. Compl. 5 at ¶ 33; Pl.'s Resp. 5. After Plaintiff responded that he had already been to jail and did not want to return for fighting someone, he claims Defendant began calling him a coward and told him to turn around to be handcuffed. Am. Compl. 5 at ¶ 33; Pl.'s Resp. 5. Plaintiff avers that once he turned around but before he was cuffed, Defendant threw him to the ground, which caused him to strike

---

[2] Plaintiff states in his affidavit that he walked to his apartment while Defendant drove in his vehicle. Mosher Aff. Pl. App. 72. However, Plaintiff's Amended Complaint states that Defendant and the other officers drove him to his apartment in Defendant's vehicle. Am. Compl. 4 at ¶ 27.

[3] Plaintiff provides a different account in his affidavit. He does not mention that Defendant went upstairs to talk to his girlfriend. He states only: "When we got close to my apartment, and we were out of eyesight of my friends and the other officers, Mosher said I was free to go. He acted as if he was about to drive away." Curtis Aff. Pl. App. 72. Plaintiff continues: "All of a sudden, and for no reason, Mosher grabbed my arms and slammed me onto the police car." *Id.* This differs from Plaintiff's Amended Complaint, which states that "Once at the apartment, Curtis and Wagner stayed in the car, and Mosher went upstairs to talk to Curtis' girlfriend, Chappal Kuhn." Am. Compl. 4 at ¶ 28.

his head. Am. Compl. 6 at ¶ 39; Pl.'s Resp. 5. Defendant then handcuffed Plaintiff, hoisted him up against Defendant's car, and proceeded to punch Plaintiff in the rib cage four times. Pl.'s Resp. 5. During this time Defendant called Plaintiff names. *Id.* at 5–6. Defendant then put Plaintiff in his patrol vehicle and drove him to the City Detention Center. *Id.* at 6. During the ride, Plaintiff claims Defendant threatened to call Child Protective Services to have his son taken away. *Id.* He further claims Defendant never offered him medical care. Am. Compl. 9 at ¶ 59.

Not surprisingly, Defendant offers a markedly different account of the events surrounding the arrest. Defendant alleges Plaintiff became belligerent and argumentative when he asked him about the incident between Mr. Brown and Ms. Kuhn. Mosher Aff. 27 at ¶ 22. Defendant claims that he no longer felt comfortable releasing Plaintiff to his girlfriend, and so he explained to Plaintiff he was going to jail for public intoxication. *Id.* at ¶ 23. Defendant then told Plaintiff to turn around and place his hands behind his back. *Id.* at ¶ 24. Plaintiff turned but "violently wrenched his hand away" when Defendant reached to put his right hand in handcuffs. *Id.* at ¶ 25. As a result, Defendant grabbed Plaintiff by his shoulders and took him to the ground. *Id.* at ¶ 26. The two proceeded to struggle on the ground for several seconds before Defendant was able to handcuff Plaintiff. *Id.* at ¶ 27. Once in handcuffs, Defendant walked Plaintiff back to his car to perform a custodial search of his person. *Id.* at 28 ¶ 29. Defendant insists Plaintiff began to squirm and turn his body away. *Id.* at ¶ 30. Defendant claims Plaintiff still had the ability to reach into his pockets and waistband, though he was handcuffed. *Id.* at ¶ 31. To gain compliance, Defendant punched Plaintiff's side twice. *Id.* at ¶ 32. Plaintiff continued to squirm, so Defendant punched him two more times. *Id.* at ¶ 33. Plaintiff then stopped squirming, Defendant completed the custodial search, and Defendant placed him in his vehicle. *Id.* at ¶¶ 34–35. Defendant claims he asked Plaintiff if he wanted an ambulance to look

at the scratch on his head. He claims Plaintiff declined the offer. *Id.* at ¶ 36.

B.     *Procedural Background*

On November 30, 2012, Plaintiff filed suit against Defendants Michael Wade Mosher and the City of Dallas. Doc. 1. The City of Dallas filed an answer on December 17, 2012, and Defendant Mosher filed one on December 21, 2012. Docs. 10, 12. Defendant Mosher later filed a first motion for summary judgment. Doc. 23. On July 15, 2013, Plainitff filed a motion for leave to file an amended complaint. Doc. 33. Shortly thereafter, the parties filed a stipulation dismissing the City of Dallas from the lawsuit. Doc. 37. On September 13, 2013, the Court granted Plaintiff leave to file an amended complaint and subsequently denied as moot Defendant's motion for summary judgment. Doc. 42. Plaintiff thereafter filed his Amended Complaint. Doc. 43. Defendant, in turn, filed his Amended Motion for Summary Judgment. Doc. 48. Plaintiff responded on November 15, 2013, and Defendant replied on November 27, 2013. Docs. 51, 53. The Motion is now ripe for the Court's review.

## II.

## LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine issue exists for trial, the Court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a

reasonable jury could return a verdict for the non-movant. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371–72 (5th Cir. 2002).

When the party with the burden of proof is the movant, it must establish each element of its claim as a matter of law. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with some metaphysical doubt as to material facts, . . . by conclusory allegations, . . . by unsubstantiated assertions, or by only a scintilla of evidence." *Id.* (internal citations and quotations omitted). The non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quoting Fed. R. Civ. P. 56(e)).

The district court does not have a duty to search the entire record to find evidence supporting the non-movant's opposition. *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). Rather, the non-movant must "identify specific evidence in the record, and [] articulate the 'precise manner' in which that evidence support[s] [her] claim." *Bookman v. Shubzda*, 945 F. Supp. 999, 1004 (N.D. Tex. 1996) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

III.

ANALYSIS

Plaintiff alleges within his Amended Complaint that Defendant violated his constitutional rights by: (1) subjecting him to seizure without probable cause; (2) subjecting him to unreasonable seizure; (3) using unreasonable, unnecessary, and excessive force; and (4) denying him medical care for injuries suffered while being arrested. Am. Compl. 16. Defendant has asserted the defense of qualified immunity and moved for summary judgment with respect to each of Plaintiff's claims against him.

A.    *Qualified Immunity*

Qualified immunity is an affirmative defense that must be pleaded by a defendant official. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). It shields government officials who perform discretionary functions from liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.* at 818. Thus, a plaintiff seeking to defeat qualified immunity must show that: (1) the defendant's conduct violated a constitutional or statutory right, and (2) the right was clearly established at the time of misconduct. *See Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011); *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).

The legally relevant factors bearing on this analysis are different during summary judgment than during an earlier motion to dismiss. *See McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). At the motion to dismiss stage, the Court must scrutinize the defendant's conduct as alleged in the complaint. *Id.* At summary judgment the plaintiff cannot rest on the pleadings; instead the Court must look to evidence before it, though once again in the light most favorable to the

plaintiff. *Id.* Accordingly, the Court's task is to "examine the summary judgment record and determine whether [the plaintiff] has adduced sufficient evidence to raise a genuine issue of material fact" suggesting the defendant's conduct violated an actual right and that the conduct was objectively unreasonable in light of the law clearly established at the time. *Id.* Courts have discretion to decide which prong of the qualified immunity analysis to conduct first. *See Morgan*, 659 F.3d at 371; *see also Pearson v. Callaghan*, 555 U.S. 223 (2009) (overruling in part *Saucier v. Katz*, 533 U.S. 194 (2001)).

As Defendant has asserted qualified immunity with respect to all of the claims against him, the Court will consider his defense in conjunction with each of Plaintiff's four causes of action.

1.    Seizure Without Probable Cause

Plaintiff has alleged that Defendant arrested him without probable cause. This implicates a clearly established constitutional right under the Fourth Amendment. *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994) ("The right to be free from arrest without probable cause is a clearly established constitutional right."). The Court must thus consider whether Plaintiff has adduced sufficient evidence to raise a genuine issue of material fact that Defendant indeed lacked probable cause to arrest, and that his conduct was objectively unreasonable in light of the law at the time. *See McClendon*, 305 F.3d at 323.

The Court first considers whether the summary judgment submissions, considered in the light most favorable to Plaintiff, show that Defendant arrested him without probable cause in violation of the Fourth Amendment. "For warrantless arrests, the test for whether the 'police officer ha[d] probable cause to arrest [is] if, at the time of the arrest, he had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime.'"

*Mangieri*, 29 F.3d at 106 (quoting *Duckett v. City of Cedar Park*, 950 F.2d 272, 278 (5th Cir. 1992)).

"[P]robable cause may be supported by the collective knowledge of law enforcement personnel who

communicate with each other prior to the arrest." *Evett v. DETNTFF*, 330 F.3d 681, 688 (5th Cir.

2003). "We must stress, however, that while law enforcement personnel 'may rely on the totality of

facts available to them in establishing probable cause, they also may not disregard facts tending to

dissipate probable cause.'" *Id.* (quoting *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988)).

Finally, an officer may be shielded from liability if he mistakenly but reasonably concludes that

probable cause is present. *Mangieri*, 29 F.3d at 1017.

Here, Defendant arrested Plaintiff for public intoxication. Under Texas law, a person

commits that offense if he "appears in a public place while intoxicated to the degree that the person

may endanger the person or another." Tex. Pen. Code § 49.02(a). "Intoxicated" means a person does

not have "the normal use of mental or physical faculties by reason of the introduction of alcohol, a

controlled substance, a drug, a dangerous drug, a combination of two or more of those substances,

or any other substance into the body." *Id.* at § 49.01(2)(A).

Plaintiff argues that Defendant should not have arrested him because he was not a danger

to himself or others. Pl.'s Resp. 18. He points out that the original handwritten arrest report (Pl.'s

Ex. 20) indicates that the only symptom he had was bloodshot eyes. *Id.* Plaintiff also highlights the

fact that Deputy Chief Reyes stated in an internal police statement that Plaintiff did not appear to

display any symptoms of intoxication. *Id.* at 18–19. Defendant insists, however, that arrest was

proper because Plaintiff admitted he had been smoking marijuana and was found walking in an alley

after dark. Def.'s Br. 10. In addition, Plaintiff was in possession of a pipe for smoking marijuana and

stated that he and his friends were on their way to a park to smoke more. Def.'s Reply 4.

As an initial matter, the Court notes that there is conflicting evidence regarding Plaintiff's intoxication. Deputy Chief Reyes, who searched Plaintiff in the alley, stated in his internal statement to a detective for the City of Dallas that "Mr. Curtis did not appear to display any symptoms of intoxication." Pl.'s Ex. 5 at Pl. App. 33; Pl.'s Ex. 19 Pl. App. 130. However, Officer Hastings, who was also present in the alley and later followed Plaintiff and other officers to his apartment, indicated in a supplement to his internal statement that he "observed AP Curtis to be intoxicated on an unknown substances [sic]." Pl.'s Ex. 6 at Pl. App. 37; *see also* Pl.'s Ex. 19 Pl. App. 123. He further stated "AP Curtis smelled of marijuana a long [sic] with having a glass pipe which had marijuana residue in it." Pl.'s Ex. 6 Pl. App. 37. There are also discrepancies between the handwritten arrest report (Pl.'s Ex. 20) and the electronic arrest report (Pl.'s Ex. 21) with respect to the symptoms that Plaintiff displayed. For example, the former indicates only that Plaintiff had bloodshot eyes. Pl.'s Ex. 20 Pl. App. 132. The boxes for "slurred speech," "breath smelling of an alcoholic beverage," and "was a danger to self" or "other" were not checked. *Id.* The boxes regarding Plaintiff's condition—"Passed Out," "Unable to Walk," "ILL," "Injured," "Other"—were likewise left blank. *Id.* The electronic report, on the other hand, stated that Defendant and Officers Wade, Hicks, and DeWayne "found arrestee to be intoxicated from the introduction of alcohol into the body. Said officers further determined from personal observation that the arrestee had bloodshot eyes, slurred speech and breath smelling of an alcoholic beverage. Arrestee was a danger to himself and others." Pl.'s Ex. 21 Pl. App. 133–34. Notably, this account attributes Plaintiff's intoxication to alcohol rather than to marijuana. Finally, the evidence indicates that the police originally thought it was only necessary to cite Plaintiff rather than arrest him, which no doubt calls into question the degree to which any alleged intoxication put Plaintiff's safety or others' at risk. *See Bruce v. Ellis*, No. 3:12–CV–1683–L,

2013 WL 1091241, at *7 (N.D. Tex. Mar. 15, 2013) ("A reasonable jury could conclude that Ellis did not believe Bruce was a danger to herself or anyone if the officer intended only a few minutes earlier to cite her and allow her to go to Pozo's house, which was approximately a block away.").

In light of these discrepancies, the Court concludes that Plaintiff has adduced evidence to raise a genuine issue of material fact whether Defendant had probable cause to arrest him for public intoxication. However, this does not end the Court's analysis with respect to this point. After all, an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). "In other words, an officer can reasonably arrest an individual even when the subjective reason for the arrest is not supported by probable cause, so long as the facts known to the officer are sufficient to find probable cause for some criminal offense." *Davalos v. Johns*, No. 3:11–CV–0222–P, 2013 WL 1820313, at *6 (N.D. Tex. April 30, 2013). Thus, the Court must consider whether probable cause existed to arrest Plaintiff for any offense.

Based on the undisputed facts and evidence viewed in the light most favorable to Plaintiff, the Court concludes there was probable cause to arrest Plaintiff for possession of drug paraphernalia. Under the Texas Health and Safety Code, "[a] person commits [this] offense if the person knowingly or intentionally uses or possesses with intent to use drug paraphernalia . . . to inject, ingest, inhale or otherwise introduce into the human body a controlled substance in violation of this chapter."[4] Tex. Health & Safety Code § 481.125(a). When Plaintiff was discovered in the alley, he admitted to police that he had smoked marijuana, and he was in possession of a pipe used to smoke. Am.

---

[4] This is a Class C misdemeanor that is punishable by a fine up to $500. Tex. Health & Safety Code § 481.125(d); Tex. Pen. Code § 12.23.

Compl. 3 at ¶ 14. What's more, Defendant was aware of this information before he arrested Plaintiff. *Id.* at ¶ 17; Mosher Aff. 26 at ¶ 6. This demonstrates that Defendant "had knowledge that would warrant a prudent person's belief that [Plaintiff] had already committed or was committing a crime.'" *Mangieri*, 29 F.3d at 106 (internal quotation marks omitted). Thus, Defendant had probable cause to arrest.

In sum, Plaintiff has failed to demonstrate that Defendant's conduct violated his constitutional right. Consequently, the Court need not continue with the second prong of the qualified immunity analysis—whether Defendant's conduct was objectively unreasonable in light of clearly established law. Defendant is therefore entitled to qualified immunity on this claim, and the Court **GRANTS** Defendant's Motion with respect thereto.

2.    <u>Unreasonable Seizure</u>

The Court next considers Plaintiff's claim for unreasonable seizure. Plaintiff has included this in his Amended Complaint, however he nowhere distinguishes this from his previous cause for seizure without probable cause. Am. Compl. 16. Defendant similarly does not address this separately from his defense against illegal arrest. The Court therefore concludes that this claim is subsumed by the previous cause of action and relies on its analysis with respect thereto. Thus Defendant's Motion is **GRANTED** regarding Plaintiff's claim of unreasonable seizure.

3.    <u>Excessive Force</u>

The Court next turns to Plaintiff's allegation that Defendant used excessive force while arresting him. Once again this implicates a clearly established constitutional right under the Fourth Amendment. *See Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009) (per curiam) (explaining that an arrestee had a clearly established right to be free from excessive force and that it was clearly

established that the force officers could use in arrestee depended on the circumstances). The Court must thus conduct its two-part analysis to see if Plaintiff can overcome Defendant's affirmative defense of qualified immunity.

The Court begins with its first inquiry whether the summary judgment submissions, viewed in the light most favorable to Plaintiff, raise a genuine issue of fact that Defendant used excessive force against Plaintiff. *See McClendon*, 305 F.3d at 323. To establish a claim of excessive force under the Fourth Amendment, Plaintiff must demonstrate: "(1) an injury that (2) resulted directly and only from a use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). "The Fourth Amendment's reasonableness standard governs the analysis and calls on the court to examine whether officer's actions were 'objectively reasonable' in light of the circumstances he confronted, without considering his subjective intent or motive." *Geils v. Patin*, 941 F. Supp. 2d 722, 727 (N.D. Tex. 2012) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)). "Excessive force claims are thus necessarily fact-intensive and depend on the facts and circumstances of each particular case." *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012) (internal quotation marks and alterations omitted).

Plaintiff alleges that Defendant used excessive force twice: (1) when Defendant jumped on Plaintiff's back and spun him to the ground, and (2) when Defendant punched Plaintiff four times while he was handcuffed. Pl.'s Resp. 19–23. Plaintiff claims these incidents caused him to lose consciousness and resulted in injuries to his head, chest, and ribs. Pl.'s Resp. 20, 23. He further argues Defendant's use of force in taking him to the ground was both excessive and unreasonable as Plaintiff never actively resisted or attempted to evade arrest. *Id.* at 21. Furthermore, the crime for

which Plaintiff was being arrested was not severe or one associated with violence. *Id.* at 21–22. With

respect to the punches after he was already arrested, Plaintiff argues they were unreasonable and

excessive because he was already handcuffed, had been searched three times, and was surrounded

by five armed police officers. *Id.* at 23. Defendant counters that Plaintiff's injuries were only *de

minimis*. Def.'s Br. 8. In addition, Defendant argues Plaintiff has failed to demonstrate that his actions

were excessive or unreasonable. *Id.* at 9. Defendant claims the evidence shows that Plaintiff resisted

arrest by wrenching his hands away and then, once handcuffed, made suspicious movements with

his hands and body. *Id.* Thus, Defendant insists he was justified in his use of force to restrain and

subdue Plaintiff.

### 1.    *Injury*

Regarding the first element, the Fifth Circuit requires a plaintiff to have "suffered at least

some injury." *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993) (per curiam). However, "the

extent of injury suffered by a [plaintiff] is one factor that may suggest" whether the use of force was

excessive "in a particular situation." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Further, both the

amount of injury required to prevail and the amount of force that is constitutionally permissible

depend on the context in which they occur. *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996). Thus,

"the amount of amount of injury necessary to satisfy our requirement of 'some injury' and establish

a constitutional violation is directly related to the amount of force that is constitutionally permissible

under the circumstances." *Id.* at 434–35.

Plaintiff has offered a photograph of his head wound and medical records from a trip to the

hospital to establish his injuries. Pl.'s Exs. 29, 18. The medical records show Plaintiff visited the

emergency room on January 23, 2011, complaining of dizziness, chest pain, difficulty breathing,

headache, and nausea following an alleged assault by police. Pl.'s Ex. 18 Pl. App. 107–08. A physical exam revealed he had mild tenderness, swelling, and a small abrasion on his upper left forehead. *Id.* at Pl. App. 108. In addition, he had mild tenderness in the lower, right, and lateral chest. *Id.* The notes from his discharge indicate he had acute pain (head, chest), concussion with loss of consciousness, and a contusion to the chest. *Id.* at Pl. App. 109. He was instructed to apply ice intermittently, avoid strenuous activity, and return to work in two days. *Id.* He was also prescribed Vicodin and Ibuprofen. *Id.* Defendant has not controverted this evidence but only argued that the scratch to Plaintiff's forehead was "de minimis." In light of the records before it, the Court finds this argument unpersuasive and concludes that Plaintiff has established injuries to satisfy the first element of his claim. The Court will next consider whether the force that caused such injuries was constitutionally permissible.

2. *Resulting Directly and Only From Excessive Force*

The parties do not dispute that Plaintiff's head and body injuries were a result of Defendant's use of force against him. The Court shall consider the alleged excessiveness of this force under the third and final element regarding objective unreasonableness. *See Poole*, 691 F.3d at 628 ("Within this qualified immunity inquiry, the parties dispute only whether [defendants'] respective uses of force were clearly excessive and clearly unreasonable. These inquiries are often intertwined.").

3. *Objective Unreasonableness*

To assess the constitutionality of force used in a given situation, the Court "must determine whether 'the totality of the circumstances justified' the particular use of force." *Ramirez v. Knoulton*, 542 F.3d 124, 128–29 (5th Cir. 2008) (quoting *Tennessee v. Garner*, 471 U.S. 1, 9 (1985)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable

officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Further, "we must balance the amount of force used against the need for that force." *Goffney v. Sauceda*, 340 F. App'x 181, 184 (5th Cir. 2009) (per curiam). The relevant factors bearing on this analysis include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. For example, when a police officer is arresting a "dangerous, fleeing suspect," a certain amount of force has been found reasonable. *Ikerd*, 101 F.3d at 434 (citing *Garner*, 471 U.S. at 3). However, in the context of a custodial interrogation, where the suspect presents "no threat," it has been held that "the use of nearly any amount of force may result in a constitutional violation." *Ikerd*, 101 F.3d at 434 (quoting *Ware v. Reed*, 709 F.2d 345, 351 (5th Cir. 1983)). Ultimately, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)) (internal citations omitted). In other words, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

As an initial matter the court notes that Defendant has objected to Plaintiff's Exhibits 19 and 24, the Administrative Investigation Report from Detective of Police Jorge Guzman to Chief of Police David O. Brown (the "Report") and the Internal Affairs Administrative Investigation Findings (the "Findings"), respectively. Defendant argues these are not competent summary judgment evidence because they are inadmissible hearsay and are not sworn, notarized, or in the form of

affidavits. Def.'s Reply 7–8.

Federal Rule of Evidence 803(8) provides a hearsay exception for a "record or statement of a public office if it sets out: (i) the office's activities; (ii) a matter observed while under a legal duty to report . . . ; or (iii) in a civil case . . . factual findings from a legally authorized investigation," and if "neither the source of the information nor other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(A), (B).  Factors considered in determining trustworthiness are: (1) timeliness of the investigation; (2) special skill or expertise of the official; (3) whether a hearing was held and at what level; and (4) possible motivational problems. *See Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1305 (5th Cir. 1991). "A Rule 803 report is presumed to be admissible unless the party opposing admission proves the report's untrustworthiness." *Bingham v. Jefferson Cnty.*, No. 1:11–CV–48, 2013 WL 1312563, at *7 (E.D. Tex. Mar. 1, 2013)(citing *Moss*, 933 F.2d at 1305).

Here, Defendant has not shown that sources of information for Plaintiff's exhibits lack trustworthiness. Defendant's reliance upon the fact that "the statements" are unsworn is unpersuasive, as he has pointed to nothing within the Rules of Evidence or case law to demonstrate Rule 803(8)'s exception is limited to sworn statements or affidavits. Further, the case on which Defendant relies, *Watts v. Kroger Co.*, 170 F.3d 505, 508 (5th Cir. 1999), is inapposite, as the evidence at issue was not a public record but rather a collection of handwritten statements that the plaintiff had collected herself. That is not the situation before the Court; a Dallas detective collected the statements from officers as part of the Dallas Police Department's internal investigation of Defendant's conduct. The officers' statement have been incorporated into the Report and are thus part of a public record, whose trustworthiness is presumed. *See Bingham*, 2013 WL 1312563 at *7. Though the Court recognizes it cannot rely on the evaluative conclusions or opinions of the Dallas

Police Department's internal investigation, it may nevertheless consider the factual findings made therein. *See McQuaig v. McCoy*, 806 F.2d 1298, 1302 (5th Cir. 1987). Accordingly, Defendant's objection is overruled.[5] *See, e.g, Rodriguez v. City of Houston*, 250 F. Supp. 2d 691, 700 n.2 (S.D. Tex. 2003) (overruling defendant's objection to entirety of police's Internal Affairs Division Report because defendant failed to show sources were untrustworthy); *Escobar v. City of Houston*, No. 04–1945, 2007 WL 2900581, at *13 (S.D. Tex. Sept. 29, 2007) (admitting Houston Police Department's investigatory file and report under Rule 803(8)).

After reviewing the parties' submissions in the light most favorable to Plaintiff and considering the totality of the circumstances, the Court concludes that Plaintiff has raised a genuine issue of material fact regarding the objective reasonableness of the force used against him. Regarding the initial takedown, there is conflicting evidence of Plaintiff's attitude and behavior leading up to the maneuver. According to Defendant, Plaintiff was "belligerent and argumentative" when he began to question him about the encounter between Mr. Brown an Ms. Kuhn. Mosher Aff. 27 at ¶ 22. In addition, Plaintiff "violently wrenched" his hand away when Defendant tried to handcuff him. *Id.* at ¶ 25. This prompted Defendant to grab Plaintiff by the shoulders and take him to the ground. *Id.* at ¶ 26. At least one other officer supports this version of events. Officer Hastings stated that Plaintiff yelled and cursed at Defendant and then pulled away when Defendant tried to handcuff him. Pl.'s Ex. 19 Pl. App. 122; Pl.'s Ex. 6, Hastings Statement Pl. App. 35. According to Hastings,

---

[5] Assuming *arguendo* the statements do not fall within Rule 803(8)'s exception, the Court relies on Rule 807, which provides that "a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804," because the Court concludes that Plaintiff's Exhibits 19 and 24 have circumstantial guarantees of trustworthiness; are offered as evidence of material facts; are more probative than any other evidence Plaintiff can obtain through reasonable efforts; and admitting them will best serve the purposes of justice. *See* Fed. R. Evid. 803(8); Fed R. Evid. 807.

this caused both men to fall to the ground. *Id.*

However, others officers provide a strikingly different account of the incident. Officer Vertz stated that it was Defendant who was "immediately" negative and insulting, while Plaintiff was respectful the entire time. Pl.'s Ex. 19 Pl. App. 123; Pl.'s Ex. 14, Vertz Statement Pl. App. 83. Furthermore, Vertz claimed that Defendant jumped on Plaintiff's back and spun him to the ground before Plaintiff could comply with Defendant's request to turn around and put his hands behind his back. Pl.'s Ex. 19 Pl. App. 123. Officer Wesley offered a similar narrative, indicating that Plaintiff was respectful when Defendant confronted him about the incident involving Ms. Kuhn. Pl.'s Ex. 16, Wesley Statement Pl. App. 90. Wesley further stated that Plaintiff complied with Defendant's request to put his hands behind his back before Defendant "took him to the ground."[6] *Id.*; Pl.'s Ex. 19 Pl. App. 125.

The evidence is similarly mixed regarding the four punches Defendant delivered to Plaintiff's side. Defendant indicates that, once he handcuffed Plaintiff on the ground, he walked him to his squad car to perform a custodial search and then take him to jail. Mosher Aff. 28 at ¶ 29. When

---

[6] Plaintiff's own account muddles the sequence of events—claiming he was punched in the side before he was thrown to the ground, though it is clear that Plaintiff was not resisting:

> All of a sudden, and for no reason, Mosher grabbed my arms and slammed me onto the police car. I felt a sharp pain, and had the breath knocked out of me.  Mosher then slapped handcuffs on my wrists. Mosher started punching me in the ribs with his fists. He called me a 'coward' for not fighting back. He slammed me onto the ground and started kicking me. He forced his knee onto the back of my beck. He stood up, and kicked me in the face. I was in handcuffs the whole time. I was not resisting. I was very confused as to why he was even doing these things to me.

Curtis Aff. Pl. App. 72.

Plaintiff began to squirm and turn his body away, Defendant became alarmed that Plaintiff could reach into his pants and grab something to harm him. *Id.* at ¶¶ 30–32. Accordingly, Defendant punched Plaintiff twice to "gain compliance." *Id.* at ¶ 32. When this did not work, Defendant punched him twice more. *Id.* at ¶ 33. Statements from other officers again support and contradict this version of events. Officer Hastings noted that Plaintiff "was trying to move his hands towards the front of his body" and continued to move despite Defendant's first two punches. Pl.'s Ex. 19 Pl. App. 122; Pl.'s Ex. 6, Hastings Statement Pl. App. 35. However, Officer Vertz stated that Plaintiff was "handcuffed and compliant" when Defendant struck him several times in his rib cage. Pl.'s Ex. 14, Vertz Statement Pl. App. 83–84; Pl.'s Ex. 19 Pl. App. 124. Officer Becker said that it was unclear why Plaintiff was struck while in handcuffs, and Officer Wesley noted that she, Officer Officer Becker, and Officer Vertz agreed afterwards to report the incident to a supervisor. Pl.'s Ex. 15, Becker Statement Pl. App. 87; Pl.'s Ex. 16, Wesley Statement Pl. App. 90.

In sum, it is unclear whether Plaintiff argued with Defendant, resisted attempts to arrest or search him, or otherwise posed a threat to himself and/or Defendant. In other words, the Court is unable to consider the factors relevant to determining whether Defendant used excessive force in both taking down and striking Plaintiff. *See Graham*, 490 U.S. at 396 (listing relevant factors as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight."). Plaintiff has therefore adduced evidence to raise a genuine issue of fact whether Defendant violated his constitutional right. *See McClendon*, 305 F.3d at 323. Plaintiff has also adduced evidence to raise a genuine issue of fact whether Defendant's conduct was objectively unreasonable in light of the law at the time. *See Goffney*, 340 F. App'x at 184 ("The objective

reasonableness of the force exerted, which is examined to determine whether excessive force was used, coincides in large part with the inquiry to determine whether qualified immunity is available to the officers involved, i.e., the objective reasonableness of the officer's conduct."). Accordingly, the Court **DENIES** Defendant's motion with respect to both the initial takedown and the subsequent punches to Plaintiff's side.

    4.    <u>Denial of Medical Care</u>

The Court now considers Plaintiff's fourth and final cause of action for denial of medical attention while in custody. Am. Compl. 16. Plaintiff claims that Defendant failed to ask him whether he needed medical care despite the fact he was bleeding profusely from his head. Pl.'s Resp. 14–15; Pl.'s Ex. 19, Pl. App. 117. Defendant insists just the opposite—that he offered to call an ambulance for the scratch on Plaintiff's head, but Plaintiff declined. Def.'s Br. 10.

"A pretrial detainee's constitutional right to medical care, whether in prison or other custody, flows from the procedural and substantive due process guarantees of the Fourteenth Amendment." *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000). "Liability for failing to provide such care attaches if the plaintiff can show that a state official acted with deliberate indifference to a substantial risk of serious medical harm and that injuries resulted." *Id.* "To show subjective deliberate indifference, a plaintiff must present evidence: (1) that each defendant had subjective knowledge of 'facts from which an inference of substantial risk of serious harm could be drawn,' (2) that each defendant actually drew that inference; and (3) that each defendant's response to the risk indicates that the [defendant] 'subjectively intended that harm occur.'" *Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir. 2009) (quoting *Thompson v. Upshur Cnty.*, 245 F.d 447, 458–59 (5th Cir. 2001)). The Fifth Circuit has remarked that the deliberate indifference standard is an "extremely high" one to meet.

*Domino v. Texas Dep't Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Indeed, "[d]eliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997).

For Plaintiff to prevail on his claim of deliberate denial of medical care, he must establish "more than the typical quantum of evidence necessary to overcome a qualified immunity defense." *Wagner*, 227 F.3d at 324. Indeed, he "must show not only that [Defendant's] actions in failing to provide [him] medical attention before he arrived at jail were objectively unreasonable, but also that [Defendant] intended the consequence of those actions." *Id.*

After reviewing the record in the light most favorable to Plaintiff, the Court concludes that Plaintiff has failed to provide evidence to support his allegation that Defendant was deliberately indifferent to his need for medical care. First, Plaintiff has not demonstrated that Defendant's alleged failure to provide medical care gave rise to a substantial risk of serious medical harm. *See Gilbert v. French*, 665 F. Supp. 2d 743, 758 (S.D. Tex. 2009). Though Plaintiff has adduced evidence he suffered a concussion and chest injuries as a result of Defendant's alleged excessive force, he has not illustrated that Defendant's alleged failure to provide medical care caused him serious harm or caused his condition to worsen. *Id.* at 758–59 (concluding facts were legally insufficient to demonstrate plaintiff was at substantial risk of serious harm from delay of medical care). Further, Plaintiff has failed to show a genuine issue of fact that Defendant had subjective knowledge of a serious risk to Plaintiff's health or that the risk was so obvious Defendant should have inferred it. *See Tamez*, 589 F.3d at 771. In sum, Plaintiff has failed to meet the "extremely high" standard regarding deliberate indifference. Accordingly, he has not overcome Defendant's defense of qualified immunity with respect to this claim. Defendant's Motion is therefore **GRANTED**.

## IV.

## CONCLUSION

For the foregoing reasons, Defendant's Motion is **GRANTED in part** and **DENIED in part**. Defendant is entitled to qualified immunity with respect to Plaintiff's claim of (1) seizure without probable cause, (2) unreasonable seizure, and (3) denial of medical care. His Motion is therefore **GRANTED** with respect to these causes of action. However, Defendant is not entitled to qualified immunity for Plaintiff's claim of excessive force. His Motion is **DENIED** with respect to this cause of action.

SO ORDERED.

SIGNED: June 2, 2014.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE